IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>    v.<br><br>RICHARD TYLER HUNSINGER,<br>    Defendant. | CRIMINAL ACTION NO.:<br>1:22-CR-00386-AT |

## SENTENCING MEMORANDUM

COMES NOW, undersigned counsel, on behalf of RICHARD TYLER HUNSINGER ("Richard") and files this Sentencing Memorandum for the Court's consideration.

## I.    PERSONAL HISTORY

Richard is a kind and gentle person. He is deeply committed to justice and unabashedly favors the underdog. Richard's actions on July 25, 2020, stand in sharp contrast to the rest of his life.

Richard's life has been dedicated to community work and housing advocacy. He has focused on the dignity of every person especially in the right of every

[1]person to have a secure, safe and decent place to live. Richard's resume reflects that he is not contriving a story of someone committed to improving others' lives just for a sentencing hearing; he has "walked the walk".

Richard has protested what he has believed to be injustice on many occasions. (See PSR at ¶¶46-48). Richard's protests have always been peaceful until July 25, 2020.

July 25, 2020 was a day when a(n) (im)perfect storm struck Richard's life. As the Court recalls, the summer of 2020 marks a time in our nation's history when police brutality, particularly perpetrated on the weakest and most unfortunate among us, was on display. Evidence of systematic injustice perpetrated on minorities was on daily display. A pot that had been simmering for decades came to a full boil when Derrick Chauvin was seen on video placing his knee and the weight of his body on George Floyd's neck for 8 minutes and 46 seconds. Chauvin murdered Floyd in open view on an American street. As disturbing as Chauvin's actions were, it was equally disturbing that none, not one, of the numerous officers

---

[1] Richard's resume will be provided separately as it contains information that could be used by others to harm Richard or prior employers. Unfortunately, "doxing" occurs and can be violent or even dangerous. Those opposed to Richard's ideology, including fascists, could seek to harm him or others.

2

on the scene saw anything unusual about Chauvin's actions. Not a single officer interceded as Floyd cried for his mother and his life.

Breonna Taylor's young life was also extinguished in March 2020 at the hands of police. While one officer has entered a guilty plea, three other officers await trial.

But for the protests of 2020, it is doubtful that there would have been the change that has made it possible for those who killed George Floyd and Breonna Taylor (and, here in Georgia, Ahmaud Arbery, at the hands of a retired police officer and his accomplices) to be brought to justice.

However, a reminder of the police crimes that came to light in 2020 does not serve to excuse criminal conduct by another. Rather, it explains and helps to understand what brought a kind, peaceful, thoughtful, and gentle person like Richard Hunsinger to throw an explosive into a federal building.

Though Richard wore a mask and non-descript clothing, this was not an indication that he came with the intention of committing a crime on July 25th. To the contrary, the atmosphere of distrust caused the Electronic Frontier Foundation to post guides warning peaceful protestors that it was necessary to conceal the identities of protestors including their "faces and identifying marks" as "[p]olice

search images for any identifying features, including clothing and belongings" and tattoos.   See   https://ssd.eff.org/files/ssd/2020_protestguide.pdf   (Last   viewed 1/16/23)

## II.    SENTENCING GUIDELINES

### A.    Count One: Assault on an Officer

The PSR at ¶17 conflates the conviction in Count One of "Assaulting a Federal Officer" with the enhancement imposed pursuant to US.S.G. § 2A2.2 for "aggravated assault". This is an error as revealed by an analysis of the two definitions.

At the plea hearing, Mr. Carrico properly informed the Court of the elements of Count One stating,

> that the defendant did forcibly assault, ***resist, oppose, impede,
> intimidate, or interfere with*** the person described in the information;
> second, the person forcibly assaulted, resisted, opposed, impeded,
> intimidated, or interfered with was a federal officer performing an
> official duty; and, third, Your Honor, that the defendant used a deadly
> or dangerous weapon.

Plea Hearing Transcript (T'script") at p. 9, l. 2-8 (Emphasis added). As the emphasized language indicates, an assault on a federal officer may occur in a number of non-violent means including conduct as comparatively benign as "interfer[ing] with" an officer.

4

In contrast, U.S.S.G. § 2A2.2, cmt. n.1 defines aggravated assault as, a felonious assault that involved "a dangerous weapon with intent to cause bodily injury (i.e., not merely to frighten) with that weapon; (B) serious bodily injury; (C) strangling, suffocating, or attempting to strangle or suffocate; or (D) an intent to commit another felony."

The PSR, as reflected in "Probation Officer's Response" to ¶ 17, indicates that it is relying on subsection (D) "the defendant committed a felonious assault that involved an intent to commit another felony (Count Two of the Criminal Indictment)". However, this cannot be sustained as there was no "other felony". There was one felonious action, the throwing of the Molotov cocktail through the broken window. Mr. Carrico detailed the critical portion of Richard's conduct as follows,

> The defendant was one of the individuals who breached the fence and vandalized the building. Specifically, the defendant used an unknown object to smash at least four windows of the front entry of the DHS building. The defendant then lit and threw a Molotov cocktail into the building through a smashed glass door. The defendant then walked up to the smashed door he threw the Molotov cocktail through and peered inside the building.

T'script at 11-12.

As Mr. Carrico describes, Richard had a criminal intent to vandalize the building. In vandalizing the building, Richard "interfered with" K.C. So, the vandalizing of the building was not done, as required by the guideline, with "an intent to commit another felony." Rather, the goal was only to commit the vandalization and that also interfered with K.C.

In other words, the criminal intent formed by Richard was to do one criminal act, to vandalize the building. The guideline requires that the first criminal act be performed "an intent to commit another felony." There was no "other felony". The assault on K.C. occurred at the very moment Richard vandalized the building. There was one action that constitutes two crimes. See *United States v. Luscier,* 983 F.2d 1507 (9th Cir. 1993) (reversing where two crimes committed and defendant was not found to have committed assault with intent to do bodily harm or another felony) and *United States v. Shumpert Hood*, 210 F.3d 660 (6th Cir. 2000) (rejecting use of aggravated assault guidelines merely because deadly weapon used).

For the balance of the objections to the calculations of Count One, we will supplement the argument presented in our objections (to which the PSR did not

offer a substantive response) with argument and evidence at the sentencing hearing.

Count One is properly calculated as follows:

| Base offense level – U.S.S.G. § 2A2.4(a) | 10 |
| Possession of a dangerous weapon – U.S.S.G. § 2A2.4(b)(1) | +3 |
| Adjusted Offense Level | 13 |

### B.    Count Two-Damage to Federal Property

### 1.    Base Offense Level

Paragraph 25 as the PSR recommends a base offense level of 24. However, this U.S.S.G. §2K1.4(a)(1)(B) does not apply as it requires a showing that the defendant intended the "destruction or attempted destruction of a government facility". Richard neither destroyed nor attempted to destroy a government facility. As Mr. Carrico articulated in the factual basis quoted above, Richard intended to vandalize the building.

First, "damage" and "destroy" are words that have different meaning in both the vernacular and, more importantly, under the statute and guideline being applied here. Arson is defined in 18 U.S.C.A. § 844(i) to include, "Whoever maliciously ***damages or destroys***, or attempts to damage or destroy, by means of fire or an explosive, any building …" (Emphasis added). Thus, the arson statute includes the

intent to merely damage a building. However, U.S.S.G. 2K1.4(a)(1)(B) requires proof that the crime "involved the destruction or attempted destruction of … [the] government facility".

In telling the Court and Richard what he would prove had the case gone to trial, Mr. Carrico did not state that Richard intended to destroy the building. That would be an absurd claim. Rather, he accurately stated that Richard intended to vandalize the building. T'script at 11-12. In this case, the evidence is clear that the vandalism included an intent to damage, not destroy the building.

Here, the guidelines bounce us about, a bit. The cross-reference found at U.S.S.G. § 2B1.1(c)(2) mandates the application of § 2K1.4. However, because the appropriate subsection is § 2K1.4**(a)(4)**, we are directed to apply § 2B1.1 for the calculation. § 2K1.4(a)(4) mandates that two levels be added after calculating under § 2B1.1.

### 2.    The terrorism enhancement

U.S.S.G. § 3A1.4 provides for a 12-level increase where "the offense is a felony that involved, or was intended to promote, a federal crime of terrorism". 18 U.S.C. § 2332b(g)(5) defines a "federal crime of terrorism" to include an "offense

that is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct" and is a listed felony.[2]

This guideline does not apply because Richard's actions were not calculated. In order to apply this guideline, the court must make a specific finding that the defendant "calculated" his actions "to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct". In *United States v. Chandia*, 514 F.3d 365 (4th Cir. 2008) the appellate court remanded the case finding that the district court made no factual findings of the intent element even though defendant was convicted of three counts of providing material support to terrorists or terrorist organizations.

Unlike Mr. Chandia, Richard was a lawful protestor who did not take the time to "calculate" the situation but rather acted rashly in the spur of the moment. This stands in contrast to Richard's history of non-violent protest. Richard's long and established history of and commitment to non-violent protest supports the assertion that he did not "calculate" his actions but rather deviated from his lifetime commitment to peaceful protest.

---

[2] We do not contest that Count Two, charging a violation of 18 U.S.C. 1361, when it alleges a loss amount greater than $1,000, as is alleged in the information, meets this criterion.

9

Thus, the properly calculated guidelines for Count Two are:

| | |
|---|---|
| Base offense level – U.S.S.G. § 2B1.1(a)(2) | +6 |
| Loss amount of $46,000[3] – U.S.S.G. § 2B1.1(b)(1)(D) | +6 |
| When calculated under 2B1.1 - § 2K1.4(a)(4) | +2 |
| Adjusted Offense Level | 14 |

### 3.    January 6, 2020, Punishments

Hundreds of insurrectionists involved in the January 6 attack on the United States Capitol and the law enforcement officers protecting the Capitol are eligible for a terrorism enhancement. The Government acknowledged as much in 121 cases we have identified that have been resolved via plea by placing language in the plea agreements that an enhancement pursuant to U.S.S.G. § 3A1.4(a) was possible. However, to date the Government has not sought at sentencing a single "terrorism enhancement" where the defendant entered a voluntary plea.

In fact, the Government has only sought the terrorism enhancement on one occasion, where the defendant went to trial. Judge Dabney L. Friedrich refused to impose the enhancement and chastised the Government for selectively seeking the enhancement only on an occasion where the defendant exercised his right to a trial.

---

[3] This is the loss amount that the Government provided to undersigned counsel prior to the entry of the plea of guilty. Counsel will challenge, with evidence, any greater loss amount.

Judge Friedrich spent three pages of transcript reviewing numerous capitol assaults where violent conduct occurred and the Government did ***not*** seek a terrorism enhancement including where defendants:

- Physically attacked Capitol Police including,

    - Punching an officer in the face,

    - "Swinging metal poles at [officers] … striking one in the shoulder",[4]

- Attacked the United States Capitol,

- Stated, "We fucking disarm [the police] and then we storm the fucking Capitol",

- Brought multiple firearms and over 2,500 rounds of ammunition to Washington D.C.,

- Other examples that we will discuss at the sentencing hearing.

*U.S. v. Guy Wesley Reffitt*, 1:21-CR-00032-DLF (D.C.), Doc. 175 at 84-86.[5]

The Court declined to place on the record all of the available instances of a double standard. Judge Friedrich refers to additional instances cited in Reffitt's sentencing memorandum[6] and concludes that there were numerous cases of,

---

[4] This particular rioter (with an extensive criminal history) was arrested, promptly released, and returned to Capitol the same day "to further participate in the riot." At 85.

[5] Counsel will provide a copy of this transcript to the Court and the Government.

[6] Reffitt's summary of dissimilar sentences is attached hereto as Exhibit A.

> assaults and in some cases trespass on the Capitol, in some cases into the Capitol building, and in some cases pretty egregious physical assaults. In none of those cases did the government seek any of these departures, whether it be under 3A1.4(a), Application Note 4, under 5K2.0, or under 5K2.6.

*Id*. at 87, lines 1-6.

An analysis of federal cases brought against persons who committed felonies during the protests of the summer of 2020 demonstrate that the Government asks this Court to take a position the Government has not sought elsewhere. We will offer evidence at the sentencing hearing that we have identified 20 cases involving 2020 protestors where the "terrorism enhancement" applied but where the Government did not seek the terrorism enhancement. The Government only sought the enhancement against two persons, Michael Solomon and Benjamin Teeter. They are "Boogaloo Bois" who intended to engage in arms trafficking to aid a foreign terrorist organization. The sentencing judge denied the requests for a terrorism enhancement.

The evidence is clear that the Government seeks to treat Mr. Hunsinger in a manner that is harsher than it has treated either the summer of 2020 protestors or the insurrectionists at the United States Capitol.

## III.  Variance: 18 U.S.C. § 3553(a)

This Court is well-versed in the state of sentencing law and we will not repeat the entire litany of *Booker* and its progeny. Rather, we ask the Court to remember this one critical point …

The Supreme Court reaffirmed a sentencing court's freedom, indeed its obligation, to consider the entire universe of facts in a defendant's life: "Permitting sentencing courts to consider the widest possible breadth of information about a defendant 'ensures that the punishment will *suit not merely the offense but the individual defendant*.'" *Pepper v. United States*, 131 S. Ct. 1229, 1240 (2011) (emphasis added) (citations omitted). This is not a new development, it has simply been revived since *United States v. Booker,* 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005). More than sixty years ago, the Supreme Court noted that:

> The knowledge of the life of a man, his background and his family, is the only proper basis for the determination as to his treatment. There is no substitute for information. The sentencing judge in the Federal court has the tools with which to acquire that information. Failure to make full use of those tools cannot be justified.

*Williams v. New York*, 337 U.S. 241, 249 n.14  (1949) (citation omitted).

13

**(1) The nature and circumstances of the offense and the history and characteristics of the defendant;**

Richard is a rare individual who committed a terrible act for reasons that were not entirely bad. That is not to minimize the crime. Richard's actions were wrong. Richard knows that and deeply regrets it. However, as Richard's counsel it is important for me to point out to the Court that the average person comes before the Court for crimes of self-interest. Fraud and theft crimes are common examples of where someone puts their own financial interests ahead of the victim's. Most drug cases similarly are motivated by greed.

Richard, though gravely misguided by his impulsive and criminal action, committed his crime out of frustration that arose in him as he perceived injustice perpetrated by the police. In addition to the brutality demonstrated against George Floyd and Breonna Taylor, we should not forget that the United States Department of Homeland Security had a program that intentionally separated migrant parents seeking asylum from their children. In 2020, just months before the vandalization of the facility in this case, the Los Angeles Times reported that 4,368 children were intentionally "separated from their parents under the Trump administration's short-lived "zero-tolerance" policy and precursor programs." *U.S. officials say they are highly confident to have reached tally on separated children: 4,368*, L.A.Times,

14

Jan. 18, 2020. https://www.latimes.com/world-nation/story/2020-01-18/u-s-officials-say-they-are-highly-confident-to-have-reached-tally-on-separated-children-4-368. (Last viewed on 1/16/23).

Richard is a kind, compassionate, sensitive person who was troubled by the world around him. The Court will hear evidence of this at trial. Also, counsel is providing the court and Government counsel over 50 letters testifying to Richard's character and value to the community.[7]

## (2) The need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

A term of incarceration will remove a harmless person from society at great cost to society. Richard has paid a heavy price already. Richard was removed from his community and incarcerated for six weeks during a pandemic. Richard has been under pretrial release with conditions that have only gradually been lightened because Richard has demonstrated that he is not a threat to society or a threat to disobey any order that this Court (or any other court) imposes on him.

---

[7] This is a large number of letters. We do not expect the Court to read all of these. Counsel will provide a summary of there letters for the Court together with the letters prior to the sentencing hearing. To protect the identity of the writers of these letters, counsel asks that the Court consider the letters but does not make them part of the record.

**(3) The need for deterrence**

Richard taking action to influence others will serve as a much greater deterrent than him going away for some period of time. He is articulate and passionate; he is able to influence others that protest is proper but that it must be peaceful.

This is particularly true in light of the overwhelming empirical evidence that there is no relationship between sentence length and general or specific deterrence, regardless of the type of crime. *See* Andrew von Hirsh *et al., Criminal Deterrence and Sentence Severity: An Analysis of Recent Research* (1999)(concluding that "correlations between sentence severity and crime rates ... were not sufficient to achieve statistical significance," and that "the studied reviewed do not provide a basis for inferring that increasing the severity of sentences generally is capable of enhancing deterrent effects."); Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime and Justice: A Review of Research, 28-29 (2006)("[I]ncreases in severity of punishments do not yield significant (if any) marginal deterrent effects... Three National Academy of Science panels, all appointed by Republican presidents, reached that conclusion, as has every major survey of the evidence.").

16

In fact, a higher certainty of being caught is far more effective. Increased certainty of apprehension only occurs when resources are diverted from long sentences (at $40K annually).

**(4) The need to protect the public**

There is no need to protect the public from Richard. Richard has not committed an act even remotely similar to this in the 2.5 years since the offense or in the 27 years of his life prior. Based on the evidence of his life outside of July 25, 2020, including the number of character letters and persons in attendance at the sentencing hearing, Richard has otherwise lived an exemplary life.

Richard was arrested on November 5, 2020 and posted bond on December 22, 2020. PSR at p. 2, "Release Status". In the intervening two plus years, the PSR reports that not only has Richard not had a criminal offense, he has "complied with all bond conditions". ¶ 6.

**(5)   The need to provide the defendant with needed educational or vocational training or medical care**

This is not a factor.

**(6)   The kinds of sentences available**

This Court has the discretion to sentence Richard to a non-custodial sentence including probation and home confinement.

17

**(7)    The Sentencing Guidelines range;**

The sentencing guidelines are critical. It is imperative that the Government not be permitted to seek higher guidelines against Richard Hunsinger, a protestor against police injustice than it has sought against insurrectionists who attacked the very heart of democracy. Forgive me, Your Honor, for getting on a soapbox, but the Government has taken a demonstrably lighter approach to insurrectionists who threatened what has made the United States the greatest "experiment" in democracy in the history of humankind. What has distinguished us from so many other nations is the peaceful and respectful transfer of power.

I submit that we, as a nation, are still metaphorically "holding our breath" to see if disruption to the transfer of power is the "new normal" or, hopefully, that what happened on January 6, 2020 will be relegated to the "dustbin of history".

Finally, while there may be good and proper reasons for the Government to negotiate and recommend the sentences they have for the January 6 insurrectionist, it is up to this Court to not permit a disparity created by selective use of the guidelines.

**(8)    Pertinent policy statements of the Sentencing Commission**

Counsel is not aware of any not already articulated in the objections to the PSR and this memo.

**(9)    The need to avoid unwanted sentencing disparities**

Richard is named alone in this indictment. However, the Court asked the parties to inform the Court of the sentences being handed down to the January 6 insurrectionists. As articulated above, the Government has only sought a terrorism enhancement where a defendant defied them and went to trial. The presiding judge rejected the Government's invitation and refused to impose the enhancement as an obvious punishment for going to trial. Even under the Government's rejected rationale of seeking the enhancement where a defendant goes to trial, Richard is not deserving of the enhancement as he accepted responsibility for his actions.

We humbly ask this Court not to accept equivocations from the Government as to why they are not seeking the terrorism enhancement against insurrectionists who stormed the Capitol in an attempt to overthrow a lawful election and disturb the very foundation of this nation, the peaceful transition of power.

**(10)    The need to provide restitution to victims**

Restitution is most likely to be paid if Richard is able to be gainfully employed. Incarceration is an impediment to restitution.

**IV.    Conclusion**

Based on the arguments presented herein, Richard requests that this Court impose a sentence of time served, one year of home confinement (to permit release for work only with income largely directed to restitution) and three years of supervised release.

Dated: This 16th day of January, 2023.

Respectfully Submitted,

/s/ **John Lovell**
Attorney for Defendant
Georgia Bar No. 359390
John Lovell, Esq., P.C.
90F Glenda Trace, #427
Newnan, Georgia 30265
404.981.7847
john@johnrlovell.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document was formatted in Times New Roman 14 pt., in accordance with Local Rule 5.1C, and I have this day electronically filed the document with the Clerk of the Court using the CM/ECF system which will automatically send e-mail notification of such filing to the attorney(s) of record in the case, including opposing counsel.

Dated: This 16th day of January, 2023.

<u>s/John Lovell</u>
John Lovell
Georgia State Bar No. 359390
John Lovell, Esq., P.C.
90F Glenda Trace, #427
Newnan, Georgia 30265
404.981.7847
john@johnrlovell.com

21